ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Application Under the Equal Access to Justice Act of -- ) ) ) | |
| Military Aircraft Parts ) | ASBCA No. 59978 |
| ) | |
| Under Contract No. SPM4A7-11-M-T291 ) | |

APPEARANCE FOR THE APPELLANT:       Mr. Robert E. Marin
                                     President

APPEARANCES FOR THE GOVERNMENT:     Daniel K. Poling, Esq.
                                      DLA Chief Trial Attorney
                                     Edward R. Murray, Esq.
                                     Jason D. Morgan, Esq.
                                      Trial Attorneys
                                      DLA Aviation
                                      Richmond, VA

OPINION BY ADMINISTRATIVE JUDGE CLARKE

On 28 September 2015, Military Aircraft Parts (MAP) timely applied for expenses pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, after the Board sustained MAP's appeal of the termination for default by the Defense Logistics Agency (DLA). *Military Aircraft Parts*, ASBCA No. 59978, 15-1 BCA ¶ 36,101.[1] MAP seeks $5,598.41 consisting of such things as travel, meals, lodging, rental car, expert witness fee, witness fees, laboratory testing, attorney, paralegal and other miscellaneous costs (appl. at 5).[2] We find that DLA's actions satisfy the legal requirements for substantial justification and deny MAP's application.

The EAJA provides, an agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or

---

[1] MAP elected to have the appeals processed pursuant to Board Rule 12.2; consequently, the decision in the appeal was rendered by a single Administrative Judge. Board Rule 12.2(c). Pursuant to paragraph (n) of Addendum I to the Board's Rules, this decision is rendered by the same Administrative Judge.

[2] Even if our decision were in favor of MAP, we agree with DLA's argument that the majority of these expenses are not recoverable (gov't resp. br. at 6-9).

that special circumstances make an award unjust. 5 U.S.C. § 504(a)(1). Whether the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole. *Id.* For purposes of EAJA, a "party" includes any corporation the net worth of which did not exceed $7,000,000 at the time the adversary adjudication was initiated, and which had not more than 500 employees at the time the adversary adjudication was initiated. 5 U.S.C. § 504(b)(1)(B)(ii). DLA does not contest that MAP is eligible for possible recovery under the EAJA (gov't resp. br.). We find that the documents presented in support of the EAJA application demonstrate that MAP is a "party," satisfied the net worth and employee limitations required for EAJA eligibility, and that, the Board having sustained the appeal, MAP prevailed.

*Substantial Justification*

DLA's first line of defense is that it was substantially justified in all respects. The burden is on the government to show that its position was substantially justified *Lucia E. Naranjo*, ASBCA No. 52084, 00-2 BCA ¶ 30,937 at 152,707. The Supreme Court has ruled that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). We read this to mean the Supreme Court interprets "substantially" as meaning "for the most part" and that is how we approach our analysis. Only one threshold determination is to be made for the entire proceeding, including the underlying agency action. *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990); *see also Hubbard v. United States*, 480 F.3d 1327, 1332 (Fed. Cir. 2007).

DLA supports its contention that it was substantially justified in its handling of this case, both before termination and through litigation, on two arguments. First that the Board found DLA had established a *prima facie* case for default termination based on its First Article (FA) test reports (gov't resp. br. at 2). *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,258. Second, that the Board "specifically found that the Government's position with respect to the central issue in the appeal – the interpretation of the applicable post-weld tolerances – was reasonable" (*id.*). Concerning the first point, the threshold for establishing a *prima facie* case is very low essentially giving the benefit of the doubt to the government's test report. Concerning the second point, MAP points out that the contract interpretation issue was only one of four "areas of dispute" (app. reply br. ¶ 3). MAP is correct. In our decision we dealt with four areas of dispute: Drawing 16Y226 Dimensions, Post-Welding C7551 Dimensions, Welds, and Insulation Tape. *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,258-60. Therefore, we look at DLA's position on each of the four areas of dispute and determine, as the Supreme Court said, if DLA, although wrong, was justified "for the most part." *Pierce*, 487 U.S. at 566 n.2. This means that DLA does not have to be "justified" in all four of the areas of dispute to be substantially justified.

2

Concerning the Drawing 16Y226 dimensions, we agree with MAP. Initially DLA was substantially justified when it relied on its FA test results. However, this changed after MAP (1) offered to have DCMA observe MAP re-measure the FA dimensions and DLA declined the offer, (2) provided DLA with independent test results from Dimensional Inspection Laboratories (DIL) showing the dimensions were acceptable and (3) provided DLA with independent test results from Dayton T. Brown, Inc. (DTB), showing the dimensions were acceptable. *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,255-57. DLA did not challenge the credentials of DIL or DTB. We found that with this evidence "MAP met its burden of rebutting DLA's *prima facie* case that the four drawing 16Y226 dimensions were out-of-tolerance." *Id.* at 176,259. DLA's failure to investigate this credible evidence that there was a problem with Hill Air Force Base's FA measurements was both unreasonable and inexplicable. We fail to see why DLA and Hill AFB would not want to investigate what appears to be a problem with its metrology laboratory when so much is at stake for both its contractors and the Air Force. We find that DLA was not substantially justified in disregarding the credible evidence that Hill AFB's measurements of Drawing 16Y226 dimensions were inaccurate.

Concerning the Post-Welding C7551 dimensions we agree with DLA. In applying generally accepted rules of contract interpretation, we found that DLA's interpretation was "within the zone of reasonableness." *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,260. MAP correctly points out that we dropped a footnote stating, "[w]e do not find DLA's interpretation nearly as persuasive as MAP's, but that is not the test. DLA's interpretation is plausible." *Id.* at 176,260 n.9. Having found that DLA's interpretation was reasonable, albeit wrong, we conclude that DLA's reliance on that interpretation was substantially justified.

Concerning the welds, MAP offers two reasons why the Board should find that DLA's position was not substantially justified, "(7) the Government failed to consider the correctable nature of the welds in the FA's and (8) the Government failed to contact a certified weld inspector prior to disapproving MAP's welds" (appl. at 3). The evidence concerning these welds consists of Mr. Valenzuela, a MAP inspector with primary expertise in Coordinate Measuring Machine, who testified that he thought the welds were acceptable, but that if they were "a 'little too thick'" they could be repaired. *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,256. Mr. Nguyen, a MAP certified welder, testified that one weld was "a little thick" but it could be ground down. *Id.* Mr. Madison was the dimensional technician who conducted the second FA inspection. *Id.* at 176,257. He testified that he was "not a 'weld expert,' but if a weld 'didn't look right' he would note it on the inspection sheet as a 'heads up' for someone else to inspect it." He testified that he believes that an "engineer" looked at the welds. *Id.* Mr. Schabacker, lead engineer, F-16 Office, testified that his engineers are not certified weld inspectors but that he believed they were capable of conducting weld inspections. He also explained why he believed the welds were defective. *Id.* Unlike with the 16Y226 dimensions, MAP did not seek independent expert analysis of

3

the welds. MAP complains that DLA failed to contact a certified weld inspector. MAP also failed to present evidence from a certified weld inspector. In our decision we did find that the welds were correctable, however, the evidence was not so overwhelming in favor of MAP that we can conclude that DLA's position was not substantially justified. We will not give undue weight to MAP's complaint that DLA did not use a certified weld inspector when MAP also failed to do so. We conclude that DLA's position on the welds was substantially justified.

Concerning the insulation tape, nothing in the record persuades us that DLA considered this defect to be a reason to disapprove the FA. At the hearing, Mr. Schabacker, testified that the tape was easily correctable. *Military Aircraft Parts*, 15-1 BCA ¶ 36,101 at 176,256, 176,260. We find DLA's position on the insulation tape substantially justified.

Having found that DLA was substantially justified in three of the four areas of dispute, we conclude that DLA was justified in its positions "for the most part" and is therefore not liable for EAJA damages.

## CONCLUSION

MAP's application for EAJA damages is denied.

Dated: 17 November 2015

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals on an application for fees and other expenses incurred in connection with ASBCA No. 59978, Appeal of Military Aircraft Parts, rendered in accordance with 5 U.S.C. § 504.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

4